UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RODERICK DAMONE ANDERSON,

                    Petitioner,

v.                                     Case No. 3:12-cv-642-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

## ORDER

### I. Status

     Petitioner Roderick Damone Anderson, an inmate of the Florida

penal system, initiated this action on June 4, 2012, by filing a

pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under

28 U.S.C. § 2254 and Memorandum of Law (Doc. 3). In the Petition,

Anderson challenges a 2009 state court (Clay County, Florida)

judgment of conviction for sexual battery. Respondents have

submitted a memorandum in opposition to the Petition. See

Respondents' Answer in Response to Order to Show Cause (Response;

Doc. 12) with exhibits (Resp. Ex.). On June 11, 2012, the Court

entered an Order to Show Cause and Notice to Petitioner (Doc. 7),

admonishing Anderson regarding his obligations and giving Anderson a time frame in which to submit a reply. Anderson submitted a brief in reply. See Petitioner's Response to Respondents' Answer to Show Cause (Reply; Doc. 13). This case is ripe for review.

## II. Procedural History

On December 19, 2007, the State of Florida charged Anderson with sexual battery. Resp. Ex. C, Information. Anderson proceeded to trial in April 2009, see Resp. Ex. D, Transcript of the Jury Trial (Tr.), at the conclusion of which, on April 17, 2009, a jury found him guilty of sexual battery, as charged. See Resp. Ex. C at 87, Verdict; Tr. at 536-37. On May 5, 2009, the court sentenced Anderson to a term of life imprisonment. Resp. Ex. C at 107-12, Judgment.

On appeal, Anderson, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it denied: his motion to suppress evidence (ground one), and his motion to exclude the testimony of A.C., the child victim (ground two). Resp. Ex. H. The State filed an answer brief, see Resp. Ex. I, and Anderson filed a reply brief, see Resp. Ex. J. On July 29, 2010, the appellate court affirmed Anderson's conviction and sentence per curiam without issuing a written opinion, see Anderson v. State, 41 So.3d 891 (Fla. 1st DCA 2010); Resp. Ex. K, and the mandate issued on August 16, 2010, see Resp. Ex. L. Anderson did not seek review in the United States Supreme Court.

On January 13, 2011, Anderson filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. N at 1-50. In his request for post conviction relief, Anderson asserted that he was deprived of a fair trial because: he was convicted based on the child victim's inconsistent testimony (ground one); Detective Dangerfield's probable cause affidavit included a false statement (grounds two and three); and newly-discovered evidence shows that Ms. Ahtarsha Denegal tampered with the DNA evidence (ground four). As ground five, he argued that counsel was ineffective because he failed to: challenge the detective's affidavit in the arrest and booking report (subclaim one); object or challenge the sufficiency of the evidence (subclaim two); provide Anderson with various depositions during the pendency of the case (subclaim three); impeach the testimony of the child victim (subclaims four and six); object to the State's leading questions (subclaim five); and object to the admission of the child victim's videotaped interview (subclaim seven). The circuit court denied Anderson's motion on September 13, 2011. Id. at 83-200. On January 19, 2012, the appellate court affirmed the trial court's denial per curiam, see Anderson v. State, 80 So.3d 1023 (Fla. 1st DCA 2012); Resp. Ex. O, and later denied Anderson's motion for rehearing on February 23, 2012, see Resp. Exs. P; Q. The mandate issued on March 12, 2012. See Resp. Ex. M.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Anderson's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

4

court proceedings unless the adjudication of
the claim -

> (1) resulted in a decision that
> was contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as
> determined by the Supreme Court of
> the United States; or

> (2) resulted in a decision that
> was based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). "Under § 2254(d)(1)'s 'contrary
> to' clause, we grant relief only 'if the state
> court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case

differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" <u>Jones v. GDCP Warden</u>, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id</u>. (quoting <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. <u>White v. Woodall</u>,- U.S. –, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." <u>Woodall</u>, 134 S.Ct. at 1702 (quoting <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim

> implicates both AEDPA and <u>Strickland</u>, our
> review is doubly deferential. <u>Richter</u>, 131
> S.Ct. at 788 ("The standards created by
> <u>Strickland</u> and § 2254(d) are both highly
> deferential, and when the two apply in tandem,
> review is doubly so." (citations and internal
> quotation marks omitted)). [A petitioner] must
> establish that no fairminded jurist would have
> reached the Florida court's conclusion. <u>See</u>
> <u>Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v.</u>
> <u>Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230,
> 1257-58 (11th Cir. 2012). "If this standard is
> difficult to meet, that is because it was
> meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th

Cir. 2014); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230

(11th Cir. 2014).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is

no AEDPA requirement that a state court explain its reasons for

rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that §

2254(d) does not require a state court to give reasons before its

decision can be deemed to have been adjudicated on the merits);

<u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th

Cir. 2002). Thus, to the extent that Anderson's claims were

adjudicated on the merits in the state courts, they must be

evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.

> 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
> (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[1] supra, at 747-748, 111 S.Ct. 2546; Sykes,[2] supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the

---

[1] Coleman v. Thompson, 501 U.S. 722 (1991).

[2] Wainwright v. Sykes, 433 U.S. 72 (1977).

> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Maples v.</u>

<u>Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted).

In the absence of a showing of cause and prejudice, a

petitioner may receive consideration on the merits of a

procedurally defaulted claim if he can establish that a fundamental

miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result. The Eleventh Circuit has

explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." <u>Carrier</u>, 477 U.S. at 496,
> 106 S.Ct. at 2649.[3] "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just

---

[3] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d
1156, 1171 (11th Cir. 2001).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption"

11

that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Richter, 131 S.Ct. at 787-88. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The

12

> question is not whether a federal court
> believes the state court's determination under
> the <u>Strickland</u> standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." <u>Knowles v.
> Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123

(2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th

Cir. 2004) ("In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision."). "Surmounting <u>Strickland</u>'s high bar is never an

easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Anderson asserts that Detective Melissa

Dangerfield, in the probable cause section of the arrest and

booking report, falsely stated that Anderson said he placed his

mouth on the child victim's vagina. <u>See</u> Petition at 5. Respondents

contend that the claim is procedurally barred since Anderson failed

to raise the issue on direct appeal. <u>See</u> Response at 4-10. On this

record, the Court agrees that the claim has not been exhausted and

is therefore procedurally barred since Anderson failed to raise the claim in a procedurally correct manner. Anderson has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Anderson argues that he raised the claim in his Rule 3.850 motion in state court. See Reply at 2. In this regard, the trial court noted that "to the extent [Anderson] claims a lack of probable cause to substantiate his arrest, this is a claim that could or should have been raised on direct appeal." Resp. Ex. N at 84 (citations omitted). Additionally, the trial court denied the Rule 3.850 motion relating to the issue of probable cause, stating:

> In addition, probable cause for arrest exists if an officer, based on his or her knowledge, training, and experience, analyzes the totality of the circumstances and concludes that there are reasonable grounds to believe that a felony has occurred. Blanco v. State, 452 So.2d 520, 523 (Fla. 1984); City of Jacksonville v. Alexander, 487 So.2d 1146 (Fla. 1st DCA 1986); Krawczuk v. State, 634 So.2d 1070, 1073 (Fla. 1994); Kearse v. State, 662 So.2d 677, 684 (Fla. 1995). Furthermore, Defendant appears to take issue with how the detective interpreted Defendant's statements in response to questions pertaining to the allegation of sexual abuse on a minor child. Having reviewed the transcript of the interview, the Court finds Defendant's statements could be interpreted as detailed in the arrest and booking report. (Exhibit "D," pages 27-64.) Furthermore, the affidavit was supported by the minor victim's statements, another child's corroborating statements, and

14

> Defendant's DNA evidence found on the minor
> victim's underwear. (Exhibit "C," pages 63-
> 101, 195-290.) Accordingly, the affidavit was
> sufficiently supported by a fair probability
> that Defendant engaged in the alleged
> misconduct and his second and third grounds
> for relief are denied.

Id. at 84-85. On Anderson's appeal, the appellate court affirmed the trial court's denial per curiam, see Anderson, 80 So.3d 1023; Resp. Ex. O, and later denied Anderson's motion for rehearing, see Resp. Exs. P; Q.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Anderson's claim, nevertheless, is without merit as it does not warrant federal

habeas relief. The probable cause section of the arrest and booking

report, dated November 28, 2007, states:

> On the 8th day of May 2007 at 7:00 pm, the
> Defendant at 312 E. Haven Ave.[,] Green Cove
> Springs within Clay County, violated the law
> and did then and there place his mouth on the
> vagina of the victim, a 5 year old female
> child. This incident occurred at the home of
> [the] defendant. This incident was witnessed
> by an 11 year old female who completed a
> statement and was forensically interviewed.
> The victim gave credible disclosure during a
> forensic interview with the Child Protection
> Team.[4] Additionally, DNA collected from the
> victim's underwear matched the DNA collected
> from the defendant as reported by [the]
> biology section of the Florida Department of
> Law Enforcement.[5] The Defendant made several
> admissions post Miranda[6] including that the
> incident only happened one time and that he
> did not force the victim to do anything.[7] The
> defendant denied placing his penis on or in
> the victim and denied any digital
> penetration.[8] The defendant was arrested and

---

[4] See Resp. Ex. F at 7-33, Transcript of the videotaped interview of A.C. (the child victim) with the Child Protection Team (A.C.'s Interview Tr.).

[5] See Resp. Ex. E at 1, November 28, 2007 email relating to the preliminary DNA results ("A sample from the underwear demonstrated a mixture of DNA. The DNA profile resolved from the mixture matched the DNA profile from Roderick Anderson[.]"); 2, August 29, 2007 email relating to the DNA status ("The underwear did test positive for amylase, which is a component of saliva. I'll be assigning it for DNA testing in the next week.").

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

[7] See Resp. Ex. F at 43, 45, 50, 54, Transcript of the November 28, 2007 videotaped interview of Anderson (Anderson's Interview Tr.); see also Resp. Ex. E at 3-26, November 28, 2007 interview of Anderson.

[8] See Anderson's Interview Tr. at 57.

transported to the Clay County Jail without incident.

Resp. Ex. C at 3-4, Office of the Sheriff, Clay County, Florida, Arrest Report (selected capitalization omitted). Contrary to Anderson's assertion, Dangerfield's November 28, 2007 probable cause affidavit was a reasonably accurate account of Anderson's responses and affirmations to the questions she had posed to him in the interview. Upon being told about the DNA evidence, Anderson made a series of potentially incriminating admissions and affirmations. See Anderson's Interview Tr. at 49, 52 ("I can't face my family."); 50 ("Nothing was forced."); 52 ("I don't want to face them."); 55 (affirming that it was a moment of weakness), 56 (affirming that he moved the victim's panties to the side with his hands), 57-58 (permitting Detective Dangerfield to narrow the time frame of the incident), 68 (stating he is "very remorseful"). At the close of the interview, the following colloquy transpired.

> [DETECTIVE DANGERFIELD:] But[,] again you're backing away from me again and you're not telling me what happened. I know it was a one time thing. I know you feel bad about it. But the only admission that you've made [to] me is those two things. You said my DNA. I need to be very clear. You said, no, I did not put my penis or finger in her vagina. You said, no I did not put my finger in her vagina.

> THE DEFENDANT: You would have gotten that information off of her statement anyway.

> DETECTIVE DANGERFIELD: But she says that you put your tongue – you licked her pocketbook. That['s] what she called it. You

17

> licked her vagina. Did you in fact lick her
> vagina?
>
> THE DEFENDANT: You got the DNA evidence.

Id. at 69-70.

At trial, Anderson confirmed that the videotape of his interview was a complete and accurate reflection of his statements to Detective Dangerfield. See Tr. at 412. Moreover, at trial, Dangerfield testified that the videotape accurately captured the November 28th interview; she confirmed that she had the DNA results that day. Id. at 167-69. Dangerfield's November 28th probable cause affidavit was based on the preliminary DNA results and interviews with the child victim, an eyewitness, and Anderson. On this record, there were reasonable grounds for Dangerfield to believe that Anderson had committed a sexual battery upon the child victim. Accordingly, Anderson is not entitled to habeas relief as to ground one.

### B. Ground Two

As ground two, Anderson asserts that his right to due process of law was violated when the State Attorney's Office charged him with sexual battery based on Detective Dangerfield's "falsely written" probable cause affidavit. Petition at 7. In his Reply, Anderson clarifies the claim, which he argues is based on Giglio v. United States, 405 U.S. 150 (1972).

> In my second claim, my references are
> directed to the Indictment or charging
> information. My argument is the Indictment is

18

> based upon the misrepresented Affidavit and
> the officer's false declaration before the
> Court, that I made a statement I did not make,
> and that the indictment is based upon this. If
> it be found to be true, then it would clearly
> be a due process violation. . . . 405 U.S. 150
> <u>Giglio v. U.S.</u> (1972)[9] may or may not be the
> proper route. I cannot find any case law other
> than fraud on the court issues that deal with
> false claims fostered by police.

Reply at 2 (selected capitalization omitted). Respondents contend

that the claim is procedurally barred since Anderson failed to

raise the issue on direct appeal. <u>See</u> Response at 11, 12. On this

record, the Court agrees that the claim has not been exhausted and

is therefore procedurally barred since Anderson failed to raise the

claim in a procedurally correct manner. Anderson has not shown

either cause excusing the default or actual prejudice resulting

from the bar. Moreover, he has failed to identify any fact

warranting the application of the fundamental miscarriage of

justice exception.

Anderson states that he raised the claim in his Rule 3.850

motion in state court. <u>See</u> Petition at 9. As previously stated with

---

9 To obtain federal habeas relief on a <u>Giglio</u> claim, a
petitioner must prove that "(1) the prosecutor knowingly used
perjured testimony or failed to correct what he subsequently
learned was false testimony, and (2) such use was material, i.e.,
that there is any reasonable likelihood that the false testimony
could have affected the judgment." <u>Trepal v. Sec'y, Fla. Dep't of
Corr.</u>, 684 F.3d 1088, 1107-08 (11th Cir. 2012) (internal quotation
marks and citation omitted), <u>cert</u>. <u>denied</u>, 133 S.Ct. 1598 (2013).
Anderson has established neither that the prosecutor knowingly used
perjured testimony nor that any such use could have affected the
judgment. <u>See</u> Response at 12-13.

respect to ground one, the trial court denied the Rule 3.850 motion relating to this issue. On Anderson's appeal, the appellate court affirmed the trial court's denial per curiam, and later denied Anderson's motion for rehearing. Given the record in the instant action, the appellate court may have affirmed the denial of Anderson's motion for post conviction relief on the merits. If the appellate court addressed the merits, Anderson would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this claim. Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Anderson's claim, is still without merit for the reasons stated with respect to ground one. See Section VIII. A. Ground One; Response at 10-13. Anderson is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Anderson asserts that the child victim recanted. He explains:

> In this case[,] the alleged victim recanted the details given in [the] hearsay video admitted as evidence. This recantation occurred during trial. The fact of the matter is this, that the details of the hearsay video are true in that the alleged victim was previously assaulted by a man who works for her father and not myself. These details are confirmed and explained in the deposition of the alleged victim's mother, and the incident not reported to police.

Petition at 10. Respondents contend that the claim is procedurally barred since Anderson failed to raise the issue on direct appeal. See Response at 13-14. Upon review of the record, the Court agrees that the claim has not been exhausted and is therefore procedurally barred since Anderson failed to raise the claim in a procedurally correct manner. Anderson has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred and presents a sufficiently exhausted issue of federal constitutional dimension, Anderson's claim is without merit because the jury heard any inconsistencies relating to the child victim's videotaped interview and her trial testimony. The State presented ample evidence to support Anderson's conviction for sexual battery. The

Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. Thompson v. Nagle, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dep't of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 319.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Anderson committed the sexual battery upon the child victim. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. At trial, Anderson testified that he was tickling A.C. and "just moved [A.C.'s underwear] down and uncovered her stomach and [he] blew on her

22

stomach" twice for approximately ten seconds, Tr. at 404; he denied placing his mouth on A.C.'s vagina, <u>see</u> <u>id</u>. at 408. Nevertheless, the jury was entitled to believe the State witnesses, including the child victim and eyewitness's[10] accounts of what happened on the day in question. Additionally, the jury saw A.C.'s videotaped interview, <u>see</u> Tr. at 133,[11] and heard A.C.'s purportedly contradictory trial testimony, <u>see</u> <u>id</u>. at 102-26. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for sexual battery. Therefore, Anderson is not entitled to habeas relief as to ground three.

### D. Ground Four

As ground four, Anderson asserts that Ahtarsha Denegal (the child victim's mother) tampered with evidence (the victim's panties). Respondents contend that the claim is procedurally barred since Anderson failed to raise the issue on direct appeal. <u>See</u> Response at 14. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Anderson failed to raise the claim in a procedurally correct manner. Anderson has not shown either cause excusing the default or actual

---

[10] <u>See</u> Tr. at 63-102; at 67, 71, 72, 99-100 (A.M.'s testimony that she saw Anderson with his head under A.C.'s skirt; A.M. (A.C.'s Godsister) was present in the house on the day of the incident.

[11] <u>See</u> A.C.'s Interview Tr.

prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred and presents a sufficiently exhausted issue of federal constitutional dimension, Anderson's claim is still without merit. The jury heard and weighed the facts surrounding the collection of the child victim's clothing and reached a verdict of guilty. See Response at 15; Tr. at 180-87, 190 (Ahtarsha Denegal's testimony); 166-67, 297-99 (Detective Dangerfield's testimony). Therefore, Anderson is not entitled to habeas relief as to ground four.

### E. Ground Five

As ground five, Anderson asserts that counsel (James R. Thies, Sr.) was ineffective because he failed to: (a) challenge Detective Dangerfield's probable cause affidavit in the arrest and booking report; (b) object to the evidence that Ahtarsha Denegal collected and tampered with before handing it to the police; (c) provide requested discovery to Anderson; (d) impeach the child victim at trial; and (e) object to A.C.'s videotaped interview that was altered to exclude her statements relating to the man who works for her father and the other people present when the incident occurred.

Anderson raised the first ineffectiveness subclaim in his Rule 3.850 motion. Identifying the two-prong Strickland ineffectiveness

24

test as the controlling law, the court denied the post conviction

motion with respect to this claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for
> failing to challenge the detective's affidavit
> in the arrest and booking report. As a result,
> Defendant asserts his rights under the Fourth
> Amendment were violated. "Where defense
> counsel's failure to litigate a Fourth
> Amendment claim competently is the principal
> allegation of ineffectiveness, the defendant
> must prove that his Fourth Amendment claim is
> meritorious." Zakrzewski v. State, 866 So.2d
> 688, 693-95 (Fla. 2003) (quoting Kimmelman v.
> Morrison, 477 U.S. 365, 375 (1986); see Gettel
> v. State, 449 So.2d 413 (Fla. 1984). As
> discussed with regard to grounds two and
> three,[12] a review of the record shows that
> there was sufficient probable cause to arrest
> Defendant. Accordingly, Defendant's first sub-
> claim is denied.

Resp. Ex. N at 85. On Anderson's appeal, the appellate court

affirmed the trial court's denial per curiam, and later denied

Anderson's motion for rehearing.

Given the record in the instant action, the appellate court

may have affirmed the denial of Anderson's motion for post

conviction relief as to this subclaim on the merits. If the

appellate court addressed the claim on the merits, Anderson would

not be entitled to relief because the state courts' adjudications

of this claim are entitled to deference under AEDPA. After a review

of the record and the applicable law, the Court concludes that the

---

[12] In grounds two and three of Anderson's Rule 3.850 motion,
he asserted that the detective's affidavit included a false
statement and did not accurately reflect his responses to questions
posed during the interview.

state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Anderson's claim regarding his counsel's failure to challenge the probable cause affidavit is still without merit. The trial court's conclusion with respect to this claim is fully supported by the record. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014), cert. denied, 135 S.Ct. 1483 (2015). The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. Thies is an experienced criminal defense attorney.[13] The inquiry is

---

[13] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999). James R. Thies, Sr. was admitted to the Florida Bar in 1982. See http://www.floridabar.org. At the time of Anderson's trial in 2009, Thies was an experienced trial lawyer.

"whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Anderson must establish that no competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward v. Hall</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On the record in this case, counsel's performance was well within the wide range of professionally competent assistance. Anderson has failed to carry his burden of showing that his

counsel's representation fell outside that range of reasonably professional assistance. Defense counsel extensively cross-examined Detective Dangerfield and also inquired about her affidavit in the arrest and booking report. See Tr. at 296-322. Even assuming arguendo deficient performance by defense counsel, Anderson has not shown prejudice. Therefore, Anderson's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Anderson is not entitled to habeas relief on the basis of this ineffectiveness ground. See Response at 19.

As the second subclaim, Anderson asserts that counsel was ineffective because he failed to object to or challenge the evidence that Denegal collected and "tampered" with before giving it to the police. See Petition at 12-13; Reply at 2. Anderson raised this ineffectiveness claim in his Rule 3.850 motion. The post conviction court denied Anderson's motion as to this claim, stating that Anderson could not challenge the admissibility, validity, or sufficiency of the evidence against him in a post conviction motion. See Resp. Ex. N at 87. On Anderson's appeal, the appellate court affirmed the trial court's denial per curiam, and later denied Anderson's motion for rehearing.

Assuming Anderson sufficiently exhausted this ineffectiveness claim, the claim is without merit. Upon review of the record in this case, counsel's performance was well within the wide range of professionally competent assistance. On direct examination, Denegal

testified as to how she assisted Detective Dangerfield in the collection of some of A.C.'s clothing on May 8, 2007, the date of the incident, when she was called to the crime scene.

> [PROSECUTOR]: Do you recall any detectives at the scene conducting an investigation?
>
> [AHTARSHA DENEGAL[14]]: Ms.Dangerfield.
>
> [PROSECUTOR]: Now, did Detective Dangerfield ask you to collect some of A.C.['s] clothing?
>
> [AHTARSHA DENEGAL]: Yes.
>
> [PROSECUTOR]: Do you recall what clothing A.C. was wearing that day?
>
> [AHTARSHA DENEGAL]: A white shirt with pink lace at the shoulder and a skirt with jeans and the same lace around the bottom of it.
>
> [PROSECUTOR]: Was she like wearing any kind of undergarments?
>
> [AHTARSHA DENEGAL]: Yes.
>
> [PROSECUTOR]: What was she wearing?
>
> [AHTARSHA DENEGAL]: A pair of pink underwear.
>
> [PROSECUTOR]: How did you get the clothing off of A.C. that day?
>
> [AHTARSHA DENEGAL]: I took them off of her.
>
> [PROSECUTOR]: Okay. Where did you take them off of her?

---

[14] Ahtarsha Denegal is the mother of A.C. (the child victim). Tr. at 179.

[AHTARSHA DENEGAL]: Upstairs in my friends -- her godmother's house. The bathroom.

[PROSECUTOR]: Who is her godmother?

[AHTARSHA DENEGAL]: Aquanda Battle.

[PROSECUTOR]: Okay. And who is [sic] Aquanda's children?

[AHTARSHA DENEGAL]: A.M.

[PROSECUTOR]: A.M. Did you remove all of A.C.['s] clothing?

[AHTARSHA DENEGAL]: Yes.

[PROSECUTOR]: Did that include her underwear?

[AHTARSHA DENEGAL]: Yes.

[PROSECUTOR]: When you removed A.C.['s] underwear, did you do anything in particular?

[AHTARSHA DENEGAL]: I wiped her private, her vagina, from front to back just like she wipes.

[PROSECUTOR]: Okay. What part of the panties did you use when you wiped A.C.['s] vagina?

[AHTARSHA DENEGAL]: The seat.

[PROSECUTOR]: The seat? The inside or the outside?

[AHTARSHA DENEGAL]: The inside.

[PROSECUTOR]: Okay. Did you wipe any other part of A.C.['s] body with her clothing?

[AHTARSHA DENEGAL]: No.

[PROSECUTOR]: Okay. What did you do with the clothing that you took off A.C.[?]

>     [AHTARSHA DENEGAL]: I handed them to Ms.
>     Dangerfield. Put them in a paper bag.
>
>     [PROSECUTOR]: And then you gave it to the
>     police?
>
>     [AHTARSHA DENEGAL]: And gave it to the
>     police.

Tr. at 180-82. Defense counsel cross-examined Denegal about her collection of the evidence for Detective Dangerfield, see id. at 184-87, and the prosecutor briefly questioned Denegal on redirect, see id. at 190. Counsel also cross-examined Detective Dangerfield as to the collection of the evidence. See id. at 297-99.

Thus, the jury heard the facts surrounding the collection of the child victim's clothing. Counsel cannot be faulted for failing to challenge such evidence when there was no basis to exclude it. Anderson failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance when counsel did not move to exclude the evidence. Even assuming arguendo deficient performance by defense counsel, Anderson has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had challenged the evidence. Therefore, Anderson's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

As the third subclaim, Anderson asserts that counsel was ineffective because he failed to provide requested discovery to Anderson. Anderson raised this ineffectiveness claim in his Rule

31

3.850 motion. The court denied the post conviction motion with respect to this claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to provide him with various depositions during the pendency of the case. Specifically, Defendant alleges that counsel failed to provide him with several depositions and as a result, Defendant was deprived of the right to participate in his own defense. This same issue was brought to this Court's attention prior to trial at an in camera hearing on April 13, 2009. (Hearing Transcript Attached as Exhibit IA to Defendant's Motion for Post Conviction Relief)[.[15]] The in camera hearing addressed Defendant's allegations which now form the basis of his post-conviction claim for relie[f]. At the pre-trial hearing, Defendant's complaints were addressed on the record and defense counsel was given the opportunity to respond to the allegations. This Court asked Defendant if he wished to continue to trial with defense counsel as his attorney. Defendant indicated that he did. In addition, the Court finds that defense counsel provided a reasonable explanation for the conduct that formed the basis of Defendant's complaint. Consequently, the Court finds Defendant cannot establish either prong under <u>Strickland</u> and his third sub-claim is denied.

Resp. Ex. N at 87. On Anderson's appeal, the appellate court affirmed the trial court's denial per curiam, and later denied Anderson's motion for rehearing.

On this record, the appellate court may have affirmed the denial of Anderson's motion for post conviction relief on the merits. If the appellate court addressed the merits, Anderson would

---

[15] <u>See</u> Resp. Ex. N at 17-24, Transcript of the in camera hearing on April 13, 2009.

not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Anderson's claim, nevertheless, is without merit. The record supports the trial court's conclusion. At the April 13, 2009 in camera hearing, counsel explained that he provided "copies of everything," including transcribed depositions. Resp. Ex. N at 20, 21. Seemingly satisfied with counsel's explanation, Anderson affirmed that he wanted to proceed to trial with counsel's representation. Id. at 24. Anderson has failed to point to any facts showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Anderson has not shown prejudice. Therefore, Anderson's ineffectiveness claim is without

merit since he has shown neither deficient performance nor resulting prejudice.

As the fourth subclaim, Anderson asserts that counsel was ineffective when he failed to impeach the child victim at trial. Anderson raised this ineffectiveness claim in his Rule 3.850 motion. The court denied the post conviction motion as to this claim, stating that "defense counsel did attempt to impeach the victim as to both her allegedly inconsistent statements and the alleged outside influence on her statements." Resp. Ex. N at 87-88. On Anderson's appeal, the appellate court affirmed the trial court's denial per curiam, and later denied Anderson's motion for rehearing.

On this record, the appellate court may have affirmed the denial of Anderson's motion for post conviction relief on the merits. If the appellate court addressed the claim on the merits, Anderson would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings. Thus, Anderson is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Anderson's claim is without merit. The record supports the trial court's conclusion. Based on the record in the instant action, counsel's performance was within the wide range of professionally competent assistance. See Response at 23; Tr. at 113-26 (defense counsel's cross-examination of A.C.). Even assuming arguendo deficient performance by defense counsel for failing to properly impeach the child victim, Anderson has not shown prejudice. Thus, Anderson's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice.

As the fifth subclaim, Anderson asserts that counsel was ineffective because counsel failed to object to A.C.'s videotaped interview that was altered to exclude her statements relating to the man who works for her father and the other people present when the incident occurred. Anderson raised this ineffectiveness claim in his Rule 3.850 motion. The court denied the post conviction motion with respect to this claim, stating in pertinent part:

> Defendant alleges that counsel was ineffective for failing to object to the admission of the minor victim's video-taped interview. Specifically, Defendant alleges defense counsel should have objected to the fact that the video was altered and did not include the

35

> victim's statement "the man works for my
> father." Having reviewed the record, the Court
> finds the complete interview was played for
> the jury. (Exhibit "D," pages 4-26.) In
> addition, at trial, defense counsel
> highlighted the child's statement regarding
> the individual who worked for her father.
> (Exhibit "C," pages 137-138.) Accordingly,
> Defendant's claim lacks any factual or legal
> basis. . . .

Resp. Ex. N at 88. As previously stated, on Anderson's appeal, the
appellate court affirmed the trial court's denial per curiam, and
later denied Anderson's motion for rehearing.

Given the record in the instant action, the appellate court
may have affirmed the denial of Anderson's motion for post
conviction relief on the merits. If the appellate court addressed
the merits, Anderson would not be entitled to relief because the
state courts' adjudications of this claim are entitled to deference
under AEDPA. After a review of the record and the applicable law,
the Court concludes that the state courts' adjudications of this
claim were not contrary to clearly established federal law and did
not involve an unreasonable application of clearly established
federal law. Nor were the state court adjudications based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceedings. Accordingly, Anderson is
not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the
denial of the Rule 3.850 motion on the merits or that the state
courts' adjudications of this claim are not entitled to deference

under AEDPA, Anderson's claim, nevertheless, is without merit. The
trial court's conclusion is fully supported by the record. As the
post conviction court stated, "the complete interview was played
for the jury." Resp. Ex. N at 88; see Tr. at 133 (stating "video
played"); Resp. Ex. F at 7-33, A.C.'s Interview Tr. Based on the
record in the instant case, counsel's performance was within the
wide range of professionally competent assistance. Even assuming
arguendo deficient performance by defense counsel, Anderson has not
shown prejudice. Therefore, Anderson's ineffectiveness claim fails
because he has shown neither deficient performance nor resulting
prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Anderson seeks issuance of a certificate of appealability,
the undersigned opines that a certificate of appealability is not
warranted. This Court should issue a certificate of appealability
only if the petitioner makes "a substantial showing of the denial
of a constitutional right." 28 U.S.C. §2253(c)(2). To make this
substantial showing, Anderson "must demonstrate that reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong," Tennard v. Dretke, 542
U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484
(2000)), or that "the issues presented were 'adequate to deserve
encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S.

322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Anderson appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of April, 2015.

MARCIA MORALES HOWARD
United States District Judge

sc 4/13
c:
Roderick Damone Anderson
Ass't Attorney General (Heller)